Thank you, Your Honor. Good morning. May it please the Court, my name is Rosalyn Lee. I represent Appellant Dale Manning in this matter. I would like to reserve three minutes for rebuttal. I will mind the clock. Thank you. Your Honors, Mr. Manning's violations of pretrial release in an unrelated case was not obstruction of justice in the case before the Court, because when Mr. Manning violated the terms of his release in the unrelated case, he was not willfully obstructing the investigation, prosecution, or sentencing in the crime of conviction. Your Honor, the district court identified four acts by Mr. Manning as obstructive under 3C1.1, his false statements to his release officer, his failure to appear at a hearing in the unrelated case, his flight to Mexico, and his reacquisition of the firearm. Alito, I'm having a hard time with your argument. What about the false statements to the pretrial services officer? He was then on conditions of, I guess you'd call them pretrial release, even though he was awaiting sentencing, but that required him to abide by certain conditions in order to remain out of custody. And the pretrial services officer talked to him about whether or not he was in possession of firearms, which was a violation of the terms, and he lied to the probation officer about that. And then that led to the filing of a petition by the officer to revoke his conditions of release, and the court set a hearing date for that. Why doesn't that clearly fall within the guideline that talks about obstructing pending proceeding? He – that case for which he was on pretrial release was a different case. It was 08-60048, rather than the 08's. You're not even telling me numbers. Why don't you tell me what the case was? Are we talking about the child pornography case? Yes, that was the child pornography case. And he hadn't been – he hadn't been – he'd been sentenced but had not yet surrendered to the Bureau of Prisons on that night. Correct, Your Honor. And the – It seems like an investigation was pending. So there was an investigation into his firearms possession based on these reports, and that that would have been a violation of supervised release. And it seems like the guidelines indicate that as long as – in our case law, as long as an investigation is pending, even if he doesn't know that there's an investigation pending, though of course in this case he did, that that would be sufficient. Your Honor, I submit that Mr. Manning's – it was merely a false – a denial of criminal conduct. The cases in the site of the – He did more than a denial. There were three statements, Your Honor. First was a denial. It's hard to be a plain denial when you've got three statements, right? Unless there are three times no. There were three – two denials and a statement where he denied giving the firearms back to his brother. Right. So it's the – it's the and part that is the difficulty, right? The second statement, Your Honor, the denying returning the firearms to his brother. That's right. Well, Your Honor, I think that that is simply an extension of the greater denial of the conduct. He is allowed to deny the criminal conduct and have it not be obstruction of justice in this case. But there are many ways in which the statement could be true. I don't have a brother. I – he never gave me guns. There were toy guns. You know, there are lots of ways in which one could elaborate one's innocence and, depending on which one one selects, it might be more successful. If you just say no, you have one effect. If you say no, I don't even have a brother, then, you know, the – which he didn't say, but, you know, he said what he did, but you might be able to fool the officer into not even investigating. Well, he may have, Your Honor – I mean, he went – he added more stuff to probably in the hope of getting the officer not to pursue it further, which sounds like obstruction of justice. Your Honor, what – the day that he denied giving the firearms back to his brother, which was April 14, 2010, Mr. Straneri from pretrial services indicated in his report that when later on that day that Mr. Manning recanted, he called Mr. Straneri back, and what Mr. Straneri put in his report, and that's on page 56 of the excerpts of record, he said, I quote, "...it was only when he knew that further investigation would result from his answers that he came forth and admitted to having firearms without permission." And the officer did investigate further between the two statements. He didn't just sit on his hands. There was a – there was another telephone conversation, but I believe according to the log that is part of the excerpts of record, it was a 25-minute gap between the two conversations with Mr. Manning on April 14, 2010. And so in terms of showing – Kennedy, I didn't understand your answer. That when any – any subsequent investigation was minimal at – between the conversations – I'm sorry. That's a yes, right? I'm – I said he did do more. He didn't just sit on his hands. He did do more. I believe there was another phone conversation with Mr. Manning's sister-in-law. Right. So – so sister-in-law says he's got guns, he didn't return. Mr. Manning denies it, and the pretrial officer does what a – you would expect him to do, which is to go back to his source and say, hey, I asked him about this and he denied it. So he does take the time to make further investigation. I mean, calling it minimal doesn't help you at all. There's nothing – you know, he did – he did pursue it further. If – if Mr. Manning had told the truth the first time, he would have had no cause to – to do further investigation. Of course, your client, once he finds out that the officer is calling up and checking on him, he then hastens to – he hastens to correct himself. Your Honor, I – the reports from Mr. Stranaria do not indicate that necessarily Mr. Manning knew what Mr. Stranaria was going to make a subsequent phone call between these conversations. He may have, but it doesn't really matter, does it? I mean, the point is he lies and he causes a pretrial officer to do further investigation. If he had told the truth the first time, he would have – the pretrial officer would have had no reason to make a second call, right? Correct, your Honor. Okay. So why isn't that the end of – why isn't that the complete answer to Mr. Stallman's question? Because – Because of his question. Because, your Honor, the statement that is the unsworn denial of guilt is, according to the guidelines, not obstruction of justice. His other statement, because he has recanted and recanted promptly and there was no – there was no real reliance and there was no representation to the court of the false statement, in the cases – Let's move on to the – to the willful failure to appear. Are you disputing that he didn't know that he had been ordered to appear before Judge Hogan to answer to the petition that he violated the terms of his condition when he took flight to Mexico? No, your Honor. He had – there was no dispute in the district court that – Well, if that's the case, then why can't I look at 3C1.14e that says, and one of the examples of the types of conduct to which the two-level adjustment applies, is willfully failing to appear as ordered for a judicial proceeding? First, your Honor, because he was ordered to appear in a case other than the case for which the two-level increase was applied. And second, that all of the evidence that was presented to him was not ordered to serve. But he was then serving the sentence that he'd been ordered to serve, and he was on conditions of release from that conviction and sentence, was he not? Yes. And he was – The purpose of the judicial proceeding was to determine whether he had violated the conditions that allowed him to remain at liberty when he willfully failed to appear. Why is that not related to the original case that got him into trouble in the first place? It's – his failure to appear was that he did not want to appear before – to surrender for his case and to surrender to serve the sentence in that case, not to avoid any future prosecution in this matter, your Honor. And the evidence in the – before the court – Well, he's a convicted felon now, is he not? So he's got two problems. He's got a violation of the trust that the court imposed in allowing him to remain free before the Bureau of Prisons designated him to an institution, and now he's got a probation officer who's looking at him for what could be a subsequent charge of a felon in possession of firearm. Your Honor, the evidence in the record indicates that he had a long-time plan to flee and not serve the sentence in the unrelated case. But why does it matter if he had a conversation with the Deputy U.S. Marshal shortly before the hearing in which he acknowledged that he was to appear before Judge Hogan and then promptly disappear? Because the – I'm sorry, your Honor, I just have one minute. The obstruction of justice is that he had to willfully intend to obstruct the investigation prosecution of this case. No, no, no, no, we're not – counsel, we're not talking about obstruction of justice. We're talking about willfully failing to appear at a judicial proceeding. Right. I haven't heard an answer yet from you that convinces me that that enhancement, as I read it to you, doesn't apply. Because he was on a – he was on a release in a separate case, your Honor, and they apply the obstruction of justice enhancement in the case before the court. What separate case? The case that this all relates to is the original child pornography conviction for which he had yet to begin serving his sentence. Correct, your Honor, but they did not provide – they did not increase his sentence in that case. They increased his sentence in this unrelated case. And if I may, I have no time for rebuttal, your Honor. I would ask the Court please reverse the district court and remand it for resentencing without the increase for obstruction of justice. Thank you. Thank you. We'll hear from the government. May it please the Court, counsel. My name is Anne-Marie Scarlata, and I'm here on behalf of the government. Was there anything you've heard this morning you think was not adequately responded to in your brief? No, your Honor. Okay. Thank you. Defendant in this case lied repeatedly, as I – the Court is aware from its – its conversation with counsel. He lied repeatedly about firearms. That's what his lies were about. He lied about whether he had them, when he had them, whether he returned them. And all of that had to do with firearms, the offense of conviction, felon in possession of firearms. For the following reasons, the district court did not abuse its discretion in finding that the enhancement applied to his conduct of his purposeful attempts – There's no point in repeating what's in your brief. Is there anything new? No, your Honor, I was just going to roll into my argument from that, but I'll speed it up and go ahead. So the evidence before the district court supported the enhancement for his flight to Mexico to purposely thwart the investigation and prosecution of his possession of firearms. His flight to Mexico didn't occur until after he had reacquired one of the firearms at issue here. And the pretrial release agreement, as the Court is aware, and which the defendant had signed and initialed when he was first put on pretrial release in the child pornography case, advised him and gave him notice that possessing a firearm is a violation of his pretrial release agreement, and also that committing any other felonies or crimes of State – of Federal, State, or local law is a violation of the release agreement, too. So the defendant had a dual motive to flee. He both wanted to avoid serving time on his child pornography conviction, and he also wanted to avoid being held responsible for his possession of firearms. Judge Hogan had every reason to believe that the defendant's motives in fleeing related to both. No, we have read your brief. Thank you. Is that all? Yes. Thank you. The cases are.  We'll next hear argument in Beck v. Hogan.
judges: Kozinski, Tallman, Ikuta